**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| RAILPOD, INC.<br><br>Plaintiff,<br>vs.<br><br>BIG WILL ENTERPRISES INC.<br><br>Defendant. | Case No.: 1:26-cv-14482<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff RailPod, Inc. ("RailPod") files this Complaint for Declaratory Judgment of Non-Infringement and Invalidity of four United States Patents and for unfair business practices in violation of Mass. Gen. L. c. 93A §§ 2 and 11 against Defendant Big Will Enterprises ("BWE"), and alleges as follows:

## INTRODUCTION

1. RailPod is a manufacturer of autonomous and semi-autonomous vehicles and software for the inspection of railroad tracks. The RailPod platform is a self-contained vehicle that travels on train tracks and collects information on track geometry, rail wear, clearances, overhead catenary, asset mapping, and broken rail detection to provide track operators the information they need to engage in predictive maintenance and to identify problems before they result in train derailments or other damage.

2. BWE is a patent troll. BWE and its principals have a long and inglorious history of sending "Notices of Infringement" followed by filing baseless patent infringement lawsuits in an inconvenient jurisdiction to use the cost of defense to compel payments from its victims. BWE itself has filed thirty-three such lawsuits since January 2020, including twenty-eight of

them since the start of 2023. Since BWE begins with a "Notice of Infringement" before it files one of its harassing lawsuits, it is likely that number of BWE's trolling victims is substantially higher. BWE's pattern is clear: it files a baseless lawsuit and within a short period, usually even before the defendant files an answer, BWE dismisses the complaint with prejudice—an indication that it has successfully compelled a payment.

3. BWE is now attempting to compel RailPod to pay it. It has delivered a "Notice of Infringement" that baselessly and in bad faith alleges that RailPod is infringing four United States Patents that BWE claims to own: U.S. Patent Nos. 9,049,558 (the "'558 Patent"); 8,452,273 (the "'273 Patent"); 8,559,914 (the "'914 Patent"); and 8,737,951 (the "'951 Patent") (collectively, the "Asserted Patents"). Attached as **Exhibit 1** is a true and correct copy of the "Notice of Infringement." Attached as **Exhibits 2-5** are true and correct copies of the Asserted Patents.

4. RailPod files this Complaint for a Declaratory Judgment that it does not infringe any of the four asserted patents, that each of those patents is invalid, and that BWE's activities violate the Massachusetts Unfair Business Practices Act, Mass. Gen. L. c. 93A §§ 2 and 11.

## PARTIES

5. Plaintiff RailPod is a Delaware corporation registered in Massachusetts with its principal place of business located at 371 Dorchester Avenue, Suite 160, Boston, Massachusetts 02127.

6. On information and belief, BWE is a corporation organized under the laws of British Columbia, Canada, with its principal place of business at 4573 West 1st Avenue, Vancouver, British Columbia V6R 1H7, Canada.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over the claims alleged in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), because this action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

8. This Court further has subject matter jurisdiction over the claims alleged in this action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. An actual and justiciable controversy of sufficient immediacy exists between RailPod and BWE as to whether RailPod infringes the Asserted Patents and/or whether the Asserted Patents are valid. BWE has explicitly notified RailPod that RailPod infringes the Asserted Patents, stating that "BWE hereby provides RailPod with formal notice that BWE contends that the manufacture, sale, installation, integration, use, operation, support, and implementation of one or more Accused Products practices one or more claims of the Asserted Patents." (**Exh. 1** at 3.) BWE provided "representative claim charts [that] identify the presently known infringement theories based on RailPod's public product materials, RailPod's own patent disclosures, and calibrated engineering inferences where implementation details are not public." *Id.* BWE further stated that "BWE has determined that certain onboard sensing, inertial and movement-data processing, reference/orientation processing, track-geometry and condition determination, exception classification, alerting, and responsive-monitoring functionalities practice multiple claims of" the Asserted Patents. *Id.* at 37. BWE closed by warning RailPod that if RailPod did not respond within the specified two-week period from the date of the letter, "BWE will understand that RailPod does not presently wish to pursue a cooperative resolution and will consider the appropriate next steps." *Id.* at 39. Based on BWE's established history of filing baseless patent infringement lawsuits, it is apparent that unless RailPod accedes to BWE's demands, BWE will

promptly file a lawsuit in the Western District of Texas, where BWE has filed nearly all of its lawsuits with the intention of forcing RailPod to incur substantial costs in a forum that is both foreign and far from RailPod's home and to which BWE also has no ties.

9. A threat of actual and imminent injury exists as to RailPod. The injury to RailPod includes uncertainty as to whether its manufacture and sale of its RailPod vehicles and software will be free from claims of infringement of the Asserted Patents. This injury is sufficiently immediate and irreparable to warrant the issuance of a declaratory judgment in RailPod's favor.

10. This Court has supplemental jurisdiction over RailPod's state-law claim for violation of Mass. Gen. L. c. 93A §§ 2 and 11 pursuant to 28 U.S.C. §1367(a) because that claim forms part of the same case or controversy as RailPod's federal patent law claims and arises from the same nucleus of operative facts, including BWE's "Notice of Infringement" letter and its assertion of the Asserted Patents against RailPod.

11. This Court has personal jurisdiction over BWE consistent with the Due Process Clause of the United States Constitution and the Massachusetts long-arm statute, Mass. Gen. L. c. 223A §3(a) because BWE has purposefully directed its patent enforcement activities toward Massachusetts and this District by, among other things, sending its "Notice of Infringement" to RailPod's President at RailPod's principal place of business in Boston, Massachusetts, in which it accuses RailPod of infringing the Asserted Patents and demands that RailPod respond within two weeks by agreeing to pay to license the Asserted Patents, by agreeing to cease its business operations through discontinuing use of the technology that BWE baselessly asserts infringes the Asserted Patents and paying "appropriate compensation" for RailPod's past use of its own technology, or by producing to BWE its confidential technical documentation, including its "system architecture, inertial-navigation or IMU specifications, accelerometer or gyroscope

specifications, reference/orientation processing, coordinate or movement calculations, data flows, software or firmware functionality, test results, manuals, [and] engineering documentation." BWE then repeatedly communicated with RailPod's counsel, also located in this District, in connection with its enforcement activities directed at RailPod. Those emails include one dated September 3, 2026 in which BWE offered to provide "BWE standard license agreement and initial offer," one dated September 15, 2026, following up on that email and offering "an initial early stage offer," one dated September 22, 2026 in which BWE's "licensing agent" advised that "at this stage BWE has authorized me to offer RailPod a fully paid up license for $60,000. (agreement attached)" and attaching a document titled "BWE Standard License 2.docx," and one dated September 25, 2026, in which BWE's "licensing agent" advised that "[i]f we can reach an early stage resolutions [*sic*] I would be able to negotiate that number." RailPod's claims arise directly out of and relate to those Massachusetts-directed enforcement activities and BWE's offer to create a business relationship with RailPod by way of its "BWE Standard License" by which BWE would license the Asserted Patents to RailPod in exchange for a payment of $60,000.

12. In addition and in the alternative, BWE is subject to personal jurisdiction in this District pursuant to Federal Rule of Civil Procedure 4(k)(2) because this action arises under federal law, BWE as a British Columbia corporation with a principal place of business in Vancouver, Canada is not subject to jurisdiction in any state's courts of general jurisdiction, and BWE has sufficient contacts with the United States as a whole based on its pattern of asserting infringement of multiple United States Patents against more than 30 United States defendants since 2020.

13. Venue is proper in this District pursuant to 28 U.S.C. §1391(c)(3) because BWE is a foreign entity that does not reside in the United States and therefore may be sued in any judicial district, and pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to RailPod's claims occurred in this District.

## FACTS

14. RailPod designs and operates purpose-built, heavy industrial autonomous rail-inspection vehicles. RailPod's platforms integrate a sophisticated array of structural testing hardware—including optical laser profilers, high-resolution line-scan cameras, precision physical wheel encoders, and high-grade inertial navigation systems (INS)—rigidly bolted directly to a robotic rail chassis.

15. RailPod's vehicles are engineered to evaluate the physical, structural micro-spatial conditions of railroad track geometry (e.g., track gauge width, cross-level, alignment, warp, and twist) against Federal Railroad Administration (FRA) safety metrics.

16. RailPod's vehicles, combined with RailPod's web portal, give customers the ability to access GIS based inspection reports and images that include, among many other details, track geometry, rail wear, clearances, overhead catenary, asset mapping, broken rails, broken or missing fasteners.

17. RailPod also provides engineering services for its customers, including clearance studies, road crossing surveys, ballast assessments, alignment, and other services required by railroad operators to ensure the safety of their tracks.

18. RailPod's proprietary systems operate under the protection of U.S. Patent No. 9,950,716 (the "'716 Patent"), which was duly issued by the U.S. Patent and Trademark Office (USPTO) on April 24, 2018.

19. Unlike RailPod, which has developed an innovative product and service that benefits railroad operators and the public, BWE is in the business of filing lawsuits based on patents that it purports to own in order to compel its targets to pay it licensing fees or else incur the substantial costs of litigation.

20. BWE purported to acquire the Asserted Patents by assignment from IOT Human Messaging LLC, a Florida Limited Liability Company, on January 17, 2020. IOT Human Messaging LLC, in turn, purported to acquire the Asserted Patents from two of the named inventors of the Asserted Patents, M. Kelly Jones and Scott A. Horstemeyer, on July 1, 2016.

21. Within five days of BWE's purported acquisition of the Asserted Patents from IOT Human Messaging LLC, BWE embarked on a concerted campaign to sue companies for alleged infringement, which has continued even to just days before the date of this filing. BWE has (so far) filed thirty-three patent infringement lawsuits that on information and belief asserted one or more of the Asserted Patents. These lawsuits were filed against companies in various industries, including insurance, logistics, automotive, transportation, telematics, and technology. *See Big Will Enterprises Inc. v. Nexxiot, Inc.*, Case No. 4-26-cv-01384 (EDTX) (filed September 27, 2026); *Big Will Enterprises Inc. v. Enterprise Holdings, Inc.*, Case No. 1-26-cv-00652 (WDTX) (filed March 18, 2026); *Big Will Enterprises Inc. v. Frotcom International, S.A.*, Case No. 1-25-cv-01929 (WDTX) (filed November 25, 2025); *Big Will Enterprises Inc. v. Mitsubishi Corporation (Americas) et al.*, Case No. 1-25-cv-01650 (WDTX) (filed October 15, 2025); *Big Will Enterprises Inc. v. Geometris LP*, Case No. 4-25-cv-03961 (SDTX) (filed August 20, 2025); *Big Will Enterprises Inc. v. Loomis Armored Us, LLC*, Case No. 1-25-cv-01063 (WDTX) (filed July 7, 2025); *Big Will Enterprises Inc. v. Knight-Swift Transportation Holdings, Inc.*, Case No. 1-25-cv-00941 (WDTX) (filed June 18, 2025); *Big Will Enterprises Inc. v. Osram GMBH et al.*,

Case No. 1-25-cv-00179 (WDTX) (filed February 6, 2025); *Big Will Enterprises Inc. v. Rivian Automotive, Inc.*, Case No. 1-25-cv-00129 (WDTX) (filed January 28, 2025); *Big Will Enterprises Inc. v. Huzhou Dingchen Trading Co., Ltd. et al.*, Case No. 1-24-cv-01392 (WDTX) (filed November 14, 2024); *Big Will Enterprises Inc. v. Shenzhen Viofo Technology Co., Ltd.*, Case No. 1-24-cv-01393 (WDTX) (filed November 14, 2024); *Big Will Enterprises Inc. v. Kia America, Inc.*, Case No. 1-24-cv-01200 (WDTX) (October 8, 2024); *Big Will Enterprises Inc. v. Matrix Telematics Limited*, Case No. 1-24-cv-00871 (WDTX) (filed August 1, 2024); *Big Will Enterprises Inc. v. Solutions Into Motion Limited*, Case No. 1-24-cv-00833 (WDTX) (filed July 24, 2024); *Big Will Enterprises Inc. v. Aware360 Ltd.*, Case No. 1-24-cv-00799 (WDTX) (filed July 18, 2024); *Big Will Enterprises Inc. v. Safe Apps Limited*, Case No. 2-24-cv-00418 (EDTX) (filed June 4, 2024); *Big Will Enterprises Inc. v. Earnix, Inc.*, Case No. 4-24-cv-00069 (EDTX) (filed January 25, 2024); *Big Will Enterprises Inc. v. Earnix, Inc.*, Case No. 4-24-cv-00078 (NDTX) (January 23, 2024); *Big Will Enterprises Inc. v. SafeDrivePod International BV*, Case No. 1-24-cv-00042 (WDTX) (filed January 11, 2024); *Big Will Enterprises Inc. v. Autoliv, Inc. et al.*, Case No. 4-23-cv-04847 (SDTX) (filed December 29, 2023); *Big Will Enterprises Inc. v. Overhaul Risk Advisory Services, LLC et al.*, Case No. 6-23-cv-00774 (WDTX) (filed November 13, 2023); *Big Will Enterprises Inc. v. GreenRoad Technologies Inc.*, Case No. 6-23-cv-00690 (WDTX) (filed September 30, 2023); *Big Will Enterprises Inc. v. The American Automobile Association, Inc.*, Case No. 6-23-cv-00571 (WDTX) (filed August 6, 2023); *Big Will Enterprises Inc. v. Uber Technologies, Inc. d/b/a Uber*, Case No. 6-23-cv-00403 (WDTX) (May 24, 2023); *Big Will Enterprises Inc. v. Alinsco Managing General Agency, Inc.*, Case No. 6-23-cv-00341 (WDTX) (filed May 9, 2023); *Big Will Enterprises Inc. v. Solera Holdings Inc.*, Case No. 4-23-cv-00257 (NDTX) (filed March 14, 2023); *Big Will Enterprises Inc. v. The Allstate Corporation*

*et al.*, Case No. 2-23-cv-00090 (EDTX) (filed March 3, 2023); *Big Will Enterprises Inc. v. Solera Holdings Inc.*, Case No. 4-23-cv-00197 (NDTX) (filed February 25, 2023); *Big Will Enterprises Inc. v. Nationwide Mutual Insurance Company*, Case No. 6-22-cv-00993 (WDTX) (filed September 21, 2022); *Big Will Enterprises Inc. v. Unaliwear, Inc.*, Case No. 6-20-cv-00351 (WDTX) (filed April 30, 2020); *Big Will Enterprises Inc. v. Montblanc North America, LLC*, Case No. 6-20-cv-00354 (WDTX) (filed April 30, 2020); *Big Will Enterprises Inc. v. Kronoz LLC*, Case No. 5-20-cv-00027 (SDTX) (filed February 29, 2020); *Big Will Enterprises Inc. v. Unaliwear, Inc.*, Case No. 6-20-cv-00040 (WDTX) (filed January 22, 2020).

22. All of the lawsuits that BWE has filed since 2020 have been filed in federal district courts in Texas; almost all of them in the Western District.

23. Of the 33 lawsuits that BWE has filed since 2020, it has voluntarily dismissed nearly all of them within weeks of filing them; nearly all of those dismissals were with prejudice and before the defendant even filed an answer. This pattern demonstrates BWE's use of patent infringement lawsuits as a key part of its effort to pressure defendants to pay BWE rather than incur the cost of litigation in a district that is, at best, highly inconvenient for the defendant and to which the defendant has little or no ties.

24. BWE has asserted that RailPod infringes certain claims of each of the four Asserted Patents.

**COUNT I**
**<u>DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '558 PATENT</u>**

25. RailPod realleges and incorporates the allegations of paragraphs 1-24 as if fully set forth herein.

26. BWE alleges that RailPod infringes at least Claims 1, 13, 17, 25, 27, 42, 50, and 52 of the '558 Patent. Of these, only claims 1, 17, 27, 42 and 52 are independent. RailPod does

not infringe any of these independent claims and therefore also does not infringe any of the dependent claims.

27. Independent claim 1 requires, among other things, "receiving a time value and at least three streams of data sample values from one or more sensors of a wireless communication device (WCD) that is transported by a mobile thing (MT), each data sample value indicative of movement of the WCD at a corresponding time value." Independent claim 17 requires "receiving first and second data from one or more sensors associated with a wireless communication device (WCD) transported by a mobile thing (MT), the first and second data indicative of movement of the WCD," and independent claim 27 recites "receiving a plurality of data sample values from one or more sensors of the WCD that is transported by the MT." The specification of the '558 Patent describes the Field of the Invention as "relat[ing] to electronic messaging technologies, and more particularly, to systems, methods, and apparatus for accurately identifying a motion activity (MA) associated with a mobile thing (MT) using sensor data from a wireless communication device (WCD) transported by the MT so as to enable or initiate a further one or more activity based actions." ('558 Patent, Col. 1, lines 44-50.) The specification describes "WCD" as "personal portable wireless communications devices (WCDs), for example, Smartphones, tablets, mini tablets, etc." ('558 Patent Col. 1, lines 57-60.) In other words, the personal portable wireless communication device is used to determine whether the mobile thing carrying it is moving, in order to trigger certain activities based on that movement. Each of the independent claims of the '558 Patent requires two separate things: a "WCD" that is transported by an "MT."

28. Further, each of the independent claims of the '558 Patent requires "determining [or "identifying"] a mobile thing motion activity (MTMA) associated with the MT based upon"

the movement data received from the WCD. The specification describes "MTMA" as "e.g., walking, running, biking, driving, etc." ('558 Patent Col. 1, line 67 – Col. 2, line 1.) Thus, the independent claims all require that the data from the WCD be used to determine whether and how the moving thing is moving.

29. RailPod has not infringed and does not infringe any of the independent claims of the '558 Patent, either directly or indirectly, literally or under the doctrine of equivalents.

30. RailPod's vehicles do not infringe any of the independent claims of the '558 Patent because they do not include or practice multiple limitations required by each of the independent claims, including but not limited to those set forth in the preceding paragraphs. Among other reasons, there is no Wireless Communication Device as described by the '558 Patent, and no such WCD is "transported by" a separate Mobile Thing. Moreover, RailPod does not determine any mobile thing motion activity (MTMA). No RailPod system identifies, from among a set of candidate motion activities, an activity in which the vehicle is engaged. Unlike a Mobile Thing contemplated by the '558 Patent, which may be "walking, running, biking, driving, etc.," a RailPod vehicle has a single mode of locomotion: rolling on a railroad track.

31. Claims 27 and 52 further describe, respectively, a method and a system "for implementation in a wireless communication device (WCD) that is designed to detect a plurality of mobile thing motion activities (MTMAs) associated with a mobile thing." RailPod's vehicles do not have a WCD and do not detect any mobile thing motion activities associated with a mobile thing. RailPod's vehicles detect no plurality of candidate motion activities of any mobile thing.

32. Claims 27 and 52 further describe "determining an MTMA associated with the MT based upon the movement data" or "code to determine an MTMA associated with the MT

based upon the movement data." The patent describes a mobile thing motion activity (MTMA) as, "e.g., walking, running, biking, driving, etc." ('558 Patent Col. 1 line 67- Col. 2, line 1.) RailPod's vehicles do not determine an MTMA of the vehicle.

33. Claim 27 further describes receiving a "plurality of data sample values from one or more sensors of the WCD that is transported by the MT, the data sample values indicative of movement of the WCD." The RailPod vehicles do not have a WCD as described by the Patent, nor do they have a WCD that is "transported by" the MT. RailPod vehicles use an integrated sensor payload integrated into the vehicle itself.

34. As previously described, a substantial controversy of sufficient immediacy and concreteness exists between RailPod and BWE with respect to infringement of the '558 Patent. Accordingly, a declaratory judgment of non-infringement is necessary and appropriate so that RailPod may ascertain its rights regarding the claims of the '558 Patent and may further evaluate the impact of BWE's baseless infringement claims on its ability to conduct business.

**COUNT II**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE '558 PATENT**

35. RailPod realleges and incorporates the allegations of paragraphs 1-24 as if fully set forth herein.

36. Claims 1, 13, 17, 25, 27, 42, 50, and 52 of the '558 Patent that BWE asserts against RailPod are invalid under 35 U.S.C. § 101 because they are directed to patent-ineligible subject matter.

37. The asserted claims are directed to the abstract process of collecting movement data from a sensor, mathematically adjusting that data against a reference, and classifying the result as a category of motion.

38. Each asserted independent claim recites that process. Each of claims 1, 17, 27, 42, and 52 recites receiving data from one or more sensors of or associated with a wireless communication device (WCD) transported by a mobile thing (MT), deriving reference data, adjusting the remaining data against that reference data, and determining or identifying a mobile thing motion activity (MTMA) of the MT from the adjusted result. The claims differ only in how the adjusting step is expressed: claims 1, 27, and 52 recite "calculating movement data" using the reference data, while claims 17 and 42 recite "normalizing" the second data with the reference data so that it "can be analyzed in the reference framework." Claims 42 and 52 recite these operations as "one or more memories designed to store computer program code," "one or more processors designed to execute the computer program code," and "code to" perform each step. Claims 27 and 52 each recite implementation in a WCD "that is designed to detect a plurality of mobile thing motion activities (MTMAs) associated with a mobile thing (MT)."

39. The operations recited are mathematical. The specification describes the reference data as a rotation matrix applied to acceleration vectors and normalized with respect to Earth gravity. No asserted claim recites any improvement to the operation of any sensor, accelerometer, processor, memory, or wireless communication device. Rather, each uses conventional and previously-known components to obtain data and perform arithmetic on it.

40. The additional elements recited in the asserted claims beyond the data-analysis concept itself (an accelerometer or other sensor, a wireless communication device, a processor, a memory, and conventional mathematical and statistical operations) were well-understood, routine, and conventional before August 30, 2012, the earliest priority date claimed by the '273 Patent, as the specification describes. The specification states that prior researchers had used an accelerometer associated with a smartphone to identify categories of motion, and that "[t]he

values used in the analysis were mean, variance, energy of the signal, and FFT components," and it describes a published survey of "a number of methods used in signal processing" for analyzing accelerometer data, including that "using averages and differences between averages can be effective." (Nham, Siangliulue, and Yeung, "Predicting Mode of Transport From iPhone Accelerometer Data," CS 229: Machine Learning Final Projects, Stanford University (2008); Figo, Diniz, Ferreira, and Cardoso, "Preprocessing Techniques for Context Recognition from Accelerometer Data," Personal and Ubiquitous Computing 14(7): 645–662 (2010).)

41. The specification does not identify any improvement to the operation of the conventional accelerometer, the wireless communication device, the processor, or the memory. It identifies the inventors' asserted advance simply as the application of better mathematical analysis: "As compared to the analyses set forth in the Nham and Figo papers, the inventors of the present disclosure have discovered much more efficient and accurate ways to determine the motion activity of an MT…."

42. RailPod is therefore entitled to a declaratory judgment that the claims of the '558 Patent asserted against it are invalid under 35 U.S.C. §101.

43. RailPod reserves the right to assert additional invalidity grounds, including under 35 U.S.C. §§ 102, 103, and 112, as may be warranted by further investigation and analysis, and including but not limited to grounds of invalidity based on prior art, including without limitation grounds based on the Nham and Figo publications.

**COUNT III**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '273 PATENT**

44. RailPod realleges and incorporates the allegations of paragraphs 1-24 as if fully set forth herein.

45. BWE alleges that RailPod infringes at least Claims 1, 2, 3, 4, 8, 11, 12, 13, 14, 15, 16, 20, 21, 22, and 23 of the ‘273 Patent. Of these, claims 1, 12, and 22 are independent. RailPod does not infringe any of these independent claims and therefore also does not infringe any of the dependent claims.

46. The ‘273 Patent defines the Field of the Invention as “systems, methods, and apparatus for accurately identifying a motion activity (MA) associated with a mobile thing (MT) using only accelerometer data from a wireless communication device (WCD) transported by the MT so as to enable or initiate a further one or more activity based actions.” (‘273 Patent Col. 1, lines 28-34.) As with the ‘558 Patent, a WCD is described as a “personal portable wireless communications device …, for example, Smartphones.” (*Id.*, lines 42-44.)

47. Independent claims 1 and 22 of the ‘273 Patent each require receiving data “from an accelerometer of a wireless communication device (WCD) that is transported by a mobile thing (MT),” and independent claim 12 requires “an accelerometer associated with a wireless communication device (WCD) transported by a mobile thing (MT).”

48. Claims 1 and 22 then require “determining a moving thing motion activity (MTMA) associated with the MT based upon the movement data,” while Claim 12 requires “identifying a mobile thing motion activity (MTMA) associated with the MT based upon the normalized second data.” The patent specification describes MTMA as “e.g. walking, running, biking, driving, etc.” (‘273 Patent Col. 1, lines 51-52.)

49. RailPod has not infringed and does not infringe any of the independent claims of the ‘273 Patent, either directly or indirectly, literally or under the doctrine of equivalents. RailPod’s vehicles do not include or practice multiple limitations required by each of the independent claims, including but not limited to those identified herein.

50. The ‘273 Patent is directed toward identifying a motion activity of a mobile thing using “only accelerometer data from a wireless communication device (WCD) transported by the MT so as to enable or initiate a further one or more activity based actions.” There is no Wireless Communication Device such as a smartphone as described by the ‘273 Patent, and no such WCD is “transported by” a separate Mobile Thing. Moreover, RailPod’s vehicles do not identify any mobile thing motion activity (MTMA). Unlike a Mobile Thing contemplated by the ‘273 Patent, which may be “walking, running, biking, driving, etc.,” a RailPod vehicle has a single mode of locomotion: rolling on a railroad track.

51. As previously described, a substantial controversy of sufficient immediacy and concreteness exists between RailPod and BWE with respect to infringement of the ‘273 Patent. Accordingly, a declaratory judgment of non-infringement is necessary and appropriate so that RailPod may ascertain its rights regarding the claims of the ‘273 Patent and may further evaluate the impact of BWE’s baseless infringement claims on its ability to conduct business.

## COUNT IV
## <u>DECLARATORY JUDGMENT OF INVALIDITY OF THE ‘273 PATENT</u>

52. RailPod realleges and incorporates the allegations of paragraphs 1-24 as if fully set forth herein.

53. Claims 1, 2, 3, 4, 8, 11, 12, 13, 14, 15, 16, 20, 21, 22, and 23 of the ‘273 Patent, which BWE asserts against RailPod, are invalid under 35 U.S.C. § 101 because they are directed to patent-ineligible subject matter.

54. The asserted claims are directed to the abstract process of collecting acceleration data from a sensor, mathematically adjusting that data against a reference, and classifying the result as a category of motion.

55. Each asserted independent claim recites that process. Each of claims 1, 12, and 22 recites receiving acceleration data from an accelerometer of or associated with a wireless communication device, deriving reference data, adjusting the remaining data against that reference data, and determining or identifying a category of motion. Claims 1 and 22 recite "calculating movement data" using the reference data; claim 12 recites "normalizing the second data with the reference data so that the second data can be analyzed in the 2D space."

56. The operations recited are mathematical, and the asserted dependent claims recite the arithmetic by which they are performed and the conventional settings in which they run. Claim 4 recites that "the reference data is a rotation matrix M" and that the movement data is "derived from a rotated vector, the rotated vector equal to the rotation matrix M multiplied by the vector associated with the other non-reference data sample values x,y,z." Claim 8 recites reference data "in the form of a rotation matrix that normalizes the sets of non-reference data sample values with respect to Earth gravity." Claim 23 recites "determining a rotation matrix based upon the particular set of reference data sample values" and calculating the movement data from that matrix. Claims 2, 14, and 15 recite that the reference is recognized or defined by its relationship to Earth gravity, and claims 15 and 16 recite comparing a combined or computed value to a predefined numerical range. Claim 3 recites updating the reference data each time the reference set is recognized, and claim 13 recites that the second data comprises "a plurality of periodic samples." Claims 11 and 20 recite that the steps may be performed in the wireless communication device. Claim 21 recites determining and initiating an action based upon the identified category of motion, without reciting any mechanism for doing so.

57. No asserted claim recites any improvement to the operation of any accelerometer, processor, memory, or wireless communication device. Rather, each uses conventional and previously-known components to obtain data and perform arithmetic on it.

58. The additional elements recited in the asserted claims beyond the data-analysis concept itself (an accelerometer, a wireless communication device, a processor, a memory, and conventional mathematical and statistical operations) were well-understood, routine, and conventional before August 30, 2012, the earliest priority date claimed by the ‘273 Patent. The specification of the ‘273 Patent states that prior researchers had identified categories of motion “with an accelerometer associated with a smartphone,” and that “[t]he values used in the analysis were mean, variance, energy of the signal, and FFT components,” and it describes a published survey of “a number of methods used in signal processing” for analyzing accelerometer data, including that “using averages and differences between averages can be effective.” (Nham, Siangliulue, and Yeung, “Predicting Mode of Transport From iPhone Accelerometer Data,” CS 229: Machine Learning Final Projects, Stanford University (2008); Figo, Diniz, Ferreira, and Cardoso, “Preprocessing Techniques for Context Recognition from Accelerometer Data,” Personal and Ubiquitous Computing 14(7): 645–662 (2010).) The specification identifies the inventors’ asserted advance over that work as the application of better mathematical analysis: “As compared to the analyses set forth in the Nham and Figo papers, the inventors of the present disclosure have discovered much more efficient and accurate ways to determine the motion activity of an MT….”

59. The asserted claims are further invalid under 35 U.S.C. § 112 for failure to particularly point out and distinctly claim the subject matter regarded as the invention. Asserted independent claims 1 and 22 each conclude by “determining a moving thing motion activity

(MTMA) associated with the MT." Neither claim recites a "moving thing." The only antecedent in each is "a mobile thing (MT)." The specification defines MTMA as "mobile thing motion activity," and asserted claim 12 uses that term.

60. RailPod is entitled to a declaratory judgment that the asserted claims of the '273 Patent are invalid under 35 U.S.C. §§ 101 and 112.

61. RailPod reserves the right to assert additional grounds of invalidity, including under 35 U.S.C. §§ 102, 103, and further grounds under § 112, as warranted by further investigation, discovery, and the development of the record. These include, without limitation, grounds based on the Nham and Figo publications.

## COUNT V
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '914 PATENT

62. RailPod realleges and incorporates the allegations of paragraphs 1-24 as if fully set forth herein.

63. BWE alleges that RailPod infringes at least Claims 15, 16, 17, and 20 of the '914 Patent. Of these, only claim 15 is independent.

64. RailPod has not infringed and does not infringe any of the independent claims of the '914 Patent, either directly or indirectly, literally or under the doctrine of equivalents. It therefore also does not infringe any of the dependent claims. RailPod's vehicles do not include or practice multiple limitations required by claim 15, including but not limited to those identified herein.

65. Among other reasons, the '914 Patent purports to describe "an interactive personal surveillance and security (IPSS) system for users carrying wireless communication devices." ('914 Patent, Abstract.) It describes the Field of Invention as "surveillance and security systems and, more particularly, to an interactive personal surveillance and security

(IPSS) system utilizing common communication devices capable of monitoring the users," by "determining a user's activities" and then automatically using those activities to "set or engage alarms or surveillance." ('914 Patent Col. 1, lines 14-36.) The system "comprises software (or firmware) installed on a user's portable communication device (Cell Phone, Wireless PDA, etc.) and capable of gathering GPS, accelerometer (or other motion device) readings, time, camera (or video), and audio (among others). A remotely located server (RLS) configured to communicate with and control alarm activations or surveillance information from each portable communication device. The system, both components are configured to interact and to send/receive surveillance and/or alarm information, and counter measures to each other." ('914 Patent, Col. 2, lines 30-40.)

66. Claim 15 requires four steps, each performed by the same device: "determining, by a computing device, a user activity and/or user surroundings; determining, by the computing device, a surveillance mode that corresponds to the user activity and/or the user surroundings; facilitating, by the computing device, a user-defined response to the user activity and/or the user surroundings; and communicating, by the computing device, surveillance information to at least one remotely located computer device." The claim recites "a computing device" and thereafter "the computing device," so a single device must perform all four steps; and because the fourth step requires that device to communicate surveillance information to "at least one remotely located computer device," the recited "computing device" is necessarily distinct from the remote device to which it reports. The specification describes that two-component arrangement as "software (or firmware) installed on a user's portable communication device (Cell Phone, Wireless PDA, etc.)" communicating with "[a] remotely located server (RLS) configured to communicate with and control alarm activations or surveillance information from each portable

communication device." ('914 Patent, Col. 2, lines 30-40.) Claim 15 therefore requires a computing device that determines the activity and/or surroundings of a user, selects a surveillance mode corresponding to that user's activity and/or surroundings, facilitates a response that the user has defined, and reports surveillance information to a separate, remotely located computer. The only such device the specification discloses is the user's own portable communication device.

67. RailPod's vehicles do not operate in the personal security field of use required by the '914 Patent. RailPod operates in the distinctly different and entirely unrelated field of railroad track maintenance.

68. RailPod's vehicles do not use a "computing device" such as a cell phone, wireless PDA, etc. to determine a "surveillance mode" corresponding to the user's activity and surroundings, nor do they use a "computing device" to facilitate a user-defined response to the user activity or surroundings. There is no "computing device" used to "determine a surveillance mode" or to "facilitate a user-defined response to the user's activity and/or surroundings" as described in the '914 Patent. RailPod's vehicles do not determine the activity or surroundings of any user, and nothing in them facilitates a response defined by a user to that user's activity or surroundings.

69. As previously described, a substantial controversy of sufficient immediacy and concreteness exists between RailPod and BWE with respect to infringement of the '914 Patent. Accordingly, a declaratory judgment of non-infringement is necessary and appropriate so that RailPod may ascertain its rights regarding the claims of the '914 Patent and may further evaluate the impact of BWE's baseless infringement claims on its ability to conduct business.

**COUNT VI**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE '914 PATENT**

70. RailPod realleges and incorporates the allegations of paragraphs 1-24 as if fully set forth herein.

71. Claims 15, 16, 17, and 20 of the '914 Patent, which BWE asserts against RailPod, are invalid under 35 U.S.C. § 101 because they are directed to patent-ineligible subject matter.

72. The asserted claims are directed to the abstract process of observing a person's activity or circumstances, selecting a response suited to those circumstances, carrying out the response, and reporting the circumstances to someone at another location.

73. Claim 15 recites, in its entirety, four steps: "determining, by a computing device, a user activity and/or user surroundings; determining, by the computing device, a surveillance mode that corresponds to the user activity and/or the user surroundings; facilitating, by the computing device, a user-defined response to the user activity and/or the user surroundings; and communicating, by the computing device, surveillance information to at least one remotely located computer device."

74. Claim 15 recites no technique for determining a user activity or user surroundings, no criterion for selecting a surveillance mode, no mechanism for implementing a response, and no method of communication. The only structure it recites is "a computing device." The asserted dependent claims add no mechanism: claim 16 recites that the response is activated automatically; claim 17 recites that a risk level is assigned; and claim 20 recites "matching, by the computing device, sensor data to at least one algorithm with at least one user-defined parameter," without identifying any algorithm, any parameter, or any matching technique.

75. The additional element recited beyond the process itself is a generic computing device that the specification describes as equipment the user already owns. The Background states that "individuals, carrying communication devices, would benefit from an IPSS system which utilizes most, if not all of the same hardware that they already have with them." The Summary describes the system as "software (or firmware) installed on a user's portable communication device (Cell Phone, Wireless PDA, etc.) and capable of gathering GPS, accelerometer (or other motion device) readings, time, camera (or video), and audio (among others)," communicating with "[a] remotely located server (RLS)."

76. The specification does not identify any improvement to the operation of the portable communication device or the remotely located server. It states that surveillance systems performing these functions were already known, and describes the asserted advance as making such a system mobile: "The inherent nature of stationary surveillance systems is to capture information for protecting buildings, homes, business operations and individuals while visiting a particular site. A personal surveillance system is for the protection of one or more users anywhere and all the time and not limited to areas but following the user throughout the day.…"

77. In the Notice of Allowability for application No. 12/354,927, the examiner stated that "[t]he prior art(s) of record disclose(s) subject matter common in scope to the present application, e.g., a personal surveillance system," and identified the features distinguishing then-pending independent claims 8, 12, and 22 from that prior art as "logic that facilitates a user-defined response to the user activity and/or the user surroundings and logic that transmits surveillance information to a publicly searchable database." Those claims issued as claims 1, 5, and 15, respectively, and of the three only claim 1 recites both features. Asserted claim 15 recites the first feature, as the step of "facilitating, by the computing device, a user-defined

response to the user activity and/or the user surroundings," and does not recite the second; transmission of surveillance information to a publicly searchable database appears among the method claims only in claim 18, which BWE has not asserted. The single feature on which the examiner allowed the asserted claim is a statement of a result to be achieved, and the claim recites no technique for achieving it.

78. RailPod is entitled to a declaratory judgment that claims 15, 16, 17, and 20 of the '914 Patent are invalid under 35 U.S.C. § 101.

79. RailPod reserves the right to assert additional grounds of invalidity, including under 35 U.S.C. §§ 102, 103, and 112, as warranted by further investigation, discovery, and the development of the record. These include, without limitation, grounds based on U.S. Patent Application Publication No. 2005/0075116 A1 (Laird et al.), which the examiner found anticipated the original claims of application No. 12/354,927.

**COUNT VII**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '951 PATENT**

80. RailPod realleges and incorporates the allegations of paragraphs 1-24 as if fully set forth herein.

81. BWE alleges that RailPod infringes at least Claims 1, 8, and 9 of the '951 Patent. Of these, only claim 1 is independent.

82. RailPod has not infringed and does not infringe claim 1 of the '951 Patent, either directly or indirectly, literally or under the doctrine of equivalents. It therefore also does not infringe any of the dependent claims. RailPod's vehicles do not include or practice multiple limitations required by claim 1, including but not limited to those identified herein.

83. The '951 Patent is directed to an "interactive personal surveillance and security (IPSS) system" for "one or more users carrying one or more respective wireless personal

communication devices (WCDs) that are capable of capturing and sending surveillance information (e.g. video, images, audio, sensor data, etc.) to one or more remotely located servers (RLSs)," whereupon the RLS "can identify and secure dangerous environments, encounters, etc., and log events or take other actions." ('951 Patent, Abstract.) The patent defines the Field of Invention as "an interactive personal surveillance and security (IPSS) system that is situated in a wireless communication device (WCD), for example but not limited to, a cellular telephone, a smartphone, a tablet with wireless communication capabilities, etc., and that is capable of monitoring a user's human body physical activity (HBPA) and controlling modes of operation and surveillance information capture to help safeguard and protect the user." ('951 Patent Col. 1, lines 29-36.) Claim 1 requires "a wireless communications device (WCD)" that comprises memory that stores computer code that has a first mode of operation involving "a first investigation process" to capture data as well as "instructions to determine whether or not the first data is indicative of an activity relating to a user need for assistance, an accident, or a crime."

84. RailPod's vehicles do not operate in the personal security field of use required by the '951 Patent. RailPod operates in the distinctly different and entirely unrelated field of railroad track maintenance.

85. RailPod's vehicles do not use a "wireless communication device" such as a cellular telephone, smartphone, or tablet that is capable of monitoring a user's human body physical activity (HBPA). The RailPod vehicles' integrated industrial sensors are not capable of monitoring (and do not monitor) a user's human body physical activity. The integrated industrial sensor payload is not used to determine whether a human user has a need for assistance, an accident or a crime.

86. As previously described, a substantial controversy of sufficient immediacy and concreteness exists between RailPod and BWE with respect to infringement of the '951 Patent. Accordingly, a declaratory judgment of non-infringement is necessary and appropriate so that RailPod may ascertain its rights regarding the claims of the '951 Patent and may further evaluate the impact of BWE's baseless infringement claims on its ability to conduct business.

**COUNT VIII**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE '951 PATENT**

87. RailPod realleges and incorporates the allegations of paragraphs 1-24 as if fully set forth herein.

88. Claims 1, 8, and 9 of the '951 Patent, which BWE asserts against RailPod, are invalid under 35 U.S.C. § 101 because they are directed to patent-ineligible subject matter.

89. The asserted claims are directed to the abstract process of gathering information about a situation, evaluating whether the situation warrants further inquiry, and, if it does, gathering more information.

90. Claim 1 recites "[a] wireless communications device (WCD), comprising: one or more memories that store computer program code; and one or more processors that execute the computer program code," with the code comprising instructions to capture data in a first investigation process, to determine whether that data "is indicative of an activity relating to a user need for assistance, an accident, or a crime," and to enter "a second mode of operation involving a second investigation process that is different than the first investigation process" in order to capture further data.

91. Claim 1 identifies no sensor, no detection algorithm, and no analytical technique for determining whether data is indicative of a need for assistance, an accident, or a crime. It states no respect in which the second investigation process differs from the first other than that it

is different. Asserted claim 8 recites comparing captured data with reference data and detecting an event based upon the comparison, without specifying any technique for either. Asserted claim 9 recites that the comparison is “in the time domain, frequency domain, or both,” which are the only alternatives.

92. The additional elements recited beyond the process itself are generic memories, processors, and sensors housed in a device the specification describes as “a cellular telephone, a smartphone, a tablet with wireless communication capabilities, etc.” The specification states that the system “utilizes some, if not all, of the same hardware that the individual already has with him/her.”

93. The specification does not identify any improvement to the operation of the wireless communication device, its memories, its processors, or its sensors. The Background of the ‘951 Patent consists in its entirety of the following: “Stationary surveillance systems capture information for protecting, among other things, buildings, homes, business operations, and individuals. In general, they are limited to protecting such things in predefined geographical areas.”

94. The asserted claims are further invalid under 35 U.S.C. § 112 for failure to particularly point out and distinctly claim the subject matter regarded as the invention. Asserted claim 8 depends from claim 1 and claim 9 depends from claim 8. They recite, respectively, “[t]he system of claim 1” and “[t]he system of claim 8.” Claim 1 claims a wireless communications device and provides no antecedent basis for “the system.”

95. RailPod is entitled to a declaratory judgment that claims 1, 8, and 9 of the ‘951 Patent are invalid under 35 U.S.C. §§ 101 and 112.

96. RailPod reserves the right to assert additional grounds of invalidity, including under 35 U.S.C. §§ 102, 103, and further grounds under § 112, as warranted by further investigation, discovery, and the development of the record. These include, without limitation, grounds based on U.S. Patent Application Publication No. 2005/0075116 A1 (Laird et al.).

**COUNT IX**
**VIOLATION OF MASS. GEN. L. C. 93A §§ 2 AND 11**

97. RailPod realleges and incorporates the allegations of paragraphs 1-96 as if fully set forth herein.

98. At all relevant times, RailPod and BWE were each engaged in trade or commerce within the meaning of Mass. Gen. L. c. 93A, §11.

99. The complained-of actions occurred primarily and substantially within the Commonwealth of Massachusetts. RailPod is located and conducts its business within the Commonwealth and BWE's acts and practices previously alleged were directed to RailPod in the Commonwealth and designed to interfere with RailPod's business within the Commonwealth, and RailPod has and will continue to suffer losses in the Commonwealth.

100. BWE's actions in accusing RailPod of infringing the Asserted Patents and demanding a payment calculated to be less than the cost of defending an infringement lawsuit, while establishing a long pattern of filing infringement lawsuits in a distant district where neither defendants nor BWE have any ties are unfair business practices within the meaning of Mass. Gen. L. c. 93A, §2.

101. BWE's patent infringement accusations are frivolous and in bad faith and based on mischaracterizations of BWE's Asserted Patents and mischaracterizations of RailPod's technology without sufficient or reasonable investigation to determine that they had a reasonable basis.

102. BWE drafted its claim charts, by its own admission, on "calibrated engineering inferences where implementation details are not public." (Exh. 1 at 3.) Having accused RailPod of infringement on that basis, BWE then asked RailPod to supply the implementation details BWE lacked—its system architecture, IMU and accelerometer specifications, reference and orientation processing, movement calculations, data flows, firmware functionality, test results, and engineering documentation—within two weeks. (Exh. 1 at 38.) As alleged above, BWE's licensing agent thereafter offered RailPod "a fully paid up license for $60,000," and three days later advised that "[i]f we can reach an early stage resolutions [*sic*] I would be able to negotiate that number."

103. BWE's Notice of Infringement and accompanying "claim charts" were drafted to give RailPod the impression that it might infringe the Asserted Patents and to force RailPod to incur substantial costs to fully evaluate the purported infringement and "claim charts," and BWE knew from its past litigation conduct in filing infringement lawsuits and promptly dismissing them with prejudice that many accused defendants will simply pay a "nuisance" value to eliminate the threat of an infringement lawsuit in a distant venue to which RailPod has no ties.

104. BWE's Notice of Infringement and accompanying claim charts contain misrepresentations as to what BWE's Asserted Patents actually say and superficial statements as to how those misrepresented patent claims purportedly read on RailPod's technology.

105. BWE's claim charts repeatedly answer distinct claim limitations with identical boilerplate, substitute language of BWE's own invention for the words of the claims, and in places chart limitations that do not appear in the claims charted. Among other things:

> (a) BWE answers nineteen separate claim limitations, spanning three of the four Asserted Patents, with one identical three-sentence paragraph beginning "RailPod's accused systems establish and use reference information for later sensor

interpretation." (Exh. 1 at 6-7, 9-10, 13, 15, 18-21, 24-25, 29-30, 36.) In the chart for claim 1 of the '273 Patent, BWE gives that same paragraph as its answer to three consecutive and substantively different limitations—recognizing a particular set of data sample values as a reference in a three-dimensional coordinate system, computing reference data based upon that recognition, and calculating movement data from the non-reference values—printing it twice on a single page. (Exh. 1 at 19-20.) The third of those rows combines the "calculating movement data" limitation with the limitation requiring that a motion activity be determined, so BWE identifies nothing in RailPod's products corresponding to the determination of any motion activity.

(b) In place of the claim term "mobile thing motion activity," BWE substitutes, ten times, a phrase of its own: "RailPod uses processed onboard sensor data to determine movement or operating conditions associated with the moving inspection vehicle and the track beneath it." (Exh. 1 at 7, 10, 12-13, 15, 17-18, 25, 28, 30.) Neither an "operating condition" nor the condition of the track beneath a vehicle is a motion activity of a mobile thing, which the '558 and '273 Patents describe as "e.g., walking, running, biking, driving, etc."

(c) Claim 1 of the '951 Patent requires "[i]nstructions to determine whether or not the first data is indicative of an activity relating to a user need for assistance, an accident, or a crime." BWE answers that RailPod determines "whether the sensed condition indicates an event requiring attention, including a geometry exception, track defect, abnormal condition, navigation condition, or other safety/maintenance issue." (Exh. 1 at 35.) A track geometry exception is not a user's need for assistance, an accident, or a crime.

(d) Claim 1 of the '951 Patent requires entering "a second mode of operation involving a second investigation process that is different than the first investigation process." BWE answers that limitation with the identical paragraph it used one page earlier to answer the first-mode limitation—a paragraph stating on its face that the process it describes "forms the first investigation process." (Exh. 1 at 35-36.) BWE identifies no second, different investigation process.

(e) In the chart for claim 22 of the '273 Patent, BWE charts a limitation that does not appear in claim 22. The chart recites "identifying a mobile thing motion activity (MTMA) associated with the MT based upon the normalized second data," which is a limitation of claim 12. Claim 22 requires "determining a moving

> thing motion activity (MTMA) associated with the MT based upon the movement data." (Exh. 1 at 30.)
>
> (f) Claim 15 of the '914 Patent requires "facilitating, by the computing device, a user-defined response to the user activity and/or the user surroundings." As alleged above, that is the feature the examiner identified as a basis for allowing the claim. BWE answers that limitation by rewriting it, asserting that "RailPod facilitates configured responses to determined conditions, including real-time validation by its Shadow Operations Team." (Exh. 1 at 32.) A response configured by RailPod to a track condition and carried out by RailPod's own personnel is not a response defined by a user to that user's activity or surroundings. BWE answers the separate limitation requiring a computing device to determine "a user activity and/or user surroundings" with a paragraph describing the vehicle's onboard hardware that does not mention a user. *Id*.

106. A person of ordinary skill in the art who was familiar with RailPod's technology and analyzed the Asserted Patents would realize that there is no reasonable basis to accuse RailPod of infringing any of the Asserted Patents.

107. BWE sent its Notice of Infringement accusing RailPod of infringing the Asserted Patents in bad faith as part of BWE's ongoing efforts as a patent troll to compel payments from accused infringers at a level that is lower than the cost of defending infringement lawsuits, while studiously avoiding having any court decide the merits of any of those lawsuits.

108. As the direct and proximate result of BWE's unlawful business practices, RailPod has incurred, and will continue to incur, actual economic loss in investigating and responding to BWE's baseless patent infringement accusations and otherwise addressing BWE's claims, as well as diverted engineering time and other business disruptions, all in amounts to be determined at trial.

109. RailPod is entitled to recover not less than two, and up to three times its damages, plus its reasonable attorney fees and costs, for BWE's willful and knowing violation of Mass. Gen. L. c. 93A, §§ 2 and 11.

## PRAYER FOR RELIEF

WHEREFORE, RailPod respectfully requests that this Court enter final judgment in its favor and against BWE, as follows:

A. A declaratory judgment that RailPod has not infringed and does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of any of the Asserted Patents asserted by BWE against RailPod.

B. A declaratory judgment that each of the claims of the Asserted Patents asserted by BWE against RailPod is invalid at least under 35 U.S.C. §§ 101 and 112.

C. A judgment that BWE violated Mass. Gen. L. c. 93A, §§ 2 and 11 by baselessly accusing RailPod of infringing the Asserted Patents without reasonable investigation and by providing a Notice of Infringement that misrepresents the Asserted Patents when a person of ordinary skill in the art and familiar with RailPod's technology would realize that there is no reasonable basis to accuse RailPod of infringing any of the Asserted Patents, and doing so in bad faith as part of BWE's ongoing efforts to compel payments from accused infringers by demanding payments calculated to be lower than the cost of defending infringement claims while dismissing its lawsuits well before any court could evaluate the infringement claims on the merits.

D. An award of not less than two, and up to three times, its damages, plus reasonable attorney fees and costs for BWE's knowing and willful violation of M.G.L. c. 93A, §§ 2 and 11.

E. A determination that this case is exceptional under 35 U.S.C. §285 in view of BWE's actions in this case and its history of vexatious litigation, and an award to RailPod of its reasonable attorney fees pursuant to that statute.

F. An award to RailPod of its taxable costs and pre- and post-judgment interest as provided by law.

G. Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

RailPod demands a trial by jury on all issues so triable.

Dated: October 1, 2026

/s/ Mitchell J. Matorin
Mitchell J. Matorin (BBO# 649304)
Matorin Law Office, LLC
18 Grove Street, Suite 5
Wellesley, MA 02482
(781) 453-0100
mmatorin@matorinlawoffice.com
*Attorney for Plaintiff RailPod, Inc.*